UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARDINAL MOTORS, INC.,

       *Plaintiff*,       1:20-cv-07899-PAC

  - *against* -       **OPINION & ORDER**

H&H SPORTS PROTECTION USA, INC.,

       *Defendant*.
------------------------------------------------------------X

    Defendant H&H Sports Protection USA, Inc. ("Defendant," "H&H") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff Cardinal Motors, Inc.'s[1] ("Plaintiff," "Cardinal") Amended Complaint for failure to state a claim upon which relief can be granted. Alternatively, Defendant asks for a more definite statement of the Amended Complaint, pursuant to Rule 12(e). Finally, Defendant asks the Court, pursuant to Rule 12(f), to strike from the Amended Complaint Plaintiff's allegations concerning Defendant's purported infringement of Plaintiff's design patent as alleged in Cardinal's original complaint, but now dropped.

    H&H has numerous objections to the Amended Complaint's sufficiency, but chief among them is Cardinal's failure to adequately set forth the elements of its purported trade dress. Mem. of Law Supp. Mot. Dismiss ("Mot. Dismiss"), 1, 4–9, ECF No. 24-1. Unless the Court has an

---

[1] In referring to Cardinal as a corporation, the Court follows the captioning of this case as it appears on the ECF docket and in the parties' filings. In its Amended Complaint, however, Cardinal alleges that it is a limited liability company. Am. Compl. ¶ 1, ECF No. 16. Of course, whether Cardinal is a corporation or an L.L.C. is relevant to deciphering its citizenship for purposes of determining whether the Court has diversity jurisdiction over the action. But discerning Cardinal's citizenship is unnecessary here, because the Court has original jurisdiction over Cardinal's 15 U.S.C. § 1125(a) ("Lanham Act § 43(a)") claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1121, and original jurisdiction over Cardinal's state unfair competition claims under 28 U.S.C. § 1338(b) (because they are joined with a substantial and related claim under the Lanham Act, a trademark law).

1

adequate definition of what deserves protection, it cannot confidently assess the further questions of whether (i) Plaintiff has plausibly alleged that its trade dress is distinctive and nonfunctional, and (ii) Defendant's alleged infringement is likely to cause consumer confusion between the parties' products. Thus, Plaintiff's failure to specify the character and scope of its trade dress is dispositive here; the Amended Complaint is dismissed without prejudice, pursuant to Rule 12(b)(6).

## BACKGROUND

Plaintiff is a corporate entity "in the business of designing for sale and licensing motorcycle helmets with distinctive designs." Am. Compl. ¶ 1, ECF No. 16. Defendant is a corporation that "manufactures and sells motorcycle helmets." *Id.* at ¶ 2. Plaintiff alleges that Defendant's "Torc-1" motorcycle helmet, which Defendant offers for sale in interstate commerce, is an unlawful copy of Plaintiff's motorcycle helmet, the "Bullitt." *Id.* at ¶¶ 19, 38.

Plaintiff's Amended Complaint alleges two causes of action. Count One is "Federal Unfair Competition and Trade Dress Infringement," and Count Two is "Common Law and State Statutory Unfair Competition." *Id.* at 15, 18.[2]

---

[2] The allegations accompanying these titles make Plaintiff's causes of action somewhat unclear. Count One appears to be a claim for unregistered trade dress infringement under § 43(a) of the Lanham Act, and the parties treat it as such in their briefs. *See* Mot. Dismiss 3; Opp'n 2, 8, 10–11, ECF No. 26; Reply 1, ECF No. 27. Thus, the Court will also treat Count One as a claim for unregistered trade dress infringement, which is a subspecies of unfair competition, *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 335 (E.D.N.Y. 2014), despite Plaintiff's recitation of the terms "false designation of origin" ("which is also referred to as a claim for unfair competition," *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014)), "false description and representation" (also known as "false advertising," *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015) (cleaned up)), and "dilution" of trade dress. Am. Compl. ¶ 41. While "false description and representation" and "trade dress dilution" also arise under § 43(a) of the Lanham Act, those claims have different elements than trade dress infringement, and those elements have not been adequately alleged. *See Pulse Creations*, 154 F. Supp. 3d at 56–57 (describing elements of false advertising claim); Lanham Act § 43(c)(4) (describing elements of trade dress dilution claim). Count Two alleges

2

Plaintiff defines its trade dress as "[t]he sculptural and graphic design of The Bullitt (hereinafter, the 'Trade Dress'), namely its sculptural configuration and/or its graphic and tonal finish design features, [which] is a protectable trade dress under §[]43(a) of the Lanham Act by virtue of extensive sales, publicity and online presence." *Id.* at ¶ 17. Plaintiff alleges that "[t]he Bullitt is notable for its distinctive styling with a large eye port, a distinctive silhouette and relatively thin chin bar." *Id.* at ¶ 11. Exhibit A, attached to the Amended Complaint, is Cardinal's design patent for a motorcycle helmet, "which design elements are to various extents incorporated into the Trade Dress." Am. Compl. Ex. A, ECF No. 16; Am. Compl. ¶ 33. Exhibit A contains only drawings, without any descriptions of the patent's features. *See* Am. Compl. Ex. A. Plaintiff goes on to state that "[w]hile The Bullitt allows for personal stylization, mainly in terms of color, the various versions . . . exhibitthe [sic] distinctive substance of the design which has come to be associated with Plaintiff as the originator." Am. Compl. ¶ 11. Unfortunately for Plaintiff, saying it does not make it so.

The Amended Complaint also contains nine side-by-side photo comparisons of the Bullitt and the Torc-1 or their various pieces, but the pictures are no substitute for the specific language the law requires. Descriptions of similarities between the Bullitt and the Torc-1 accompany these photos; Plaintiff argues that this "copying" is evidence of H&H's intent to confuse consumers with a similar product. *Id.* at ¶¶ 20–28. Plaintiff uses phrases like: "both helmets have brown leather-like arc segments, metallic bottom trim and a brown leather trim patch," and "the chinstraps are rectangular nylon straps that terminate in a semicircle with a contrasting snap, as illustrated below." *Id.* at ¶¶ 22, 23. Other allegations are more specific: "The original and

---

unfair competition under New York and California common law and statutory law but does not identify the statutes Plaintiff's claims are based on. Am. Compl. 18.

3

copied [cheek]pads are both a jig saw puzzle part V-shape and made of diamond-perforated pseudo-suede brown material. Both have leather on the edges that connects the diamond perforated pseudo-suede material to the back piece." *Id.* at ¶ 24.

Plaintiff further alleges that Defendant's Torc-1 helmet infringes upon Plaintiff's Trade Dress, which has caused Plaintiff millions of dollars of damages, while garnering Defendant millions of dollars of "unjust" profit. *Id.* at ¶¶ 35, 42; *see also id.* at 19. Plaintiff seeks a wide variety of equitable and monetary relief. *Id.* at 19–20.

## DISCUSSION

### I. Standard for Rule 12(b)(6) Motions to Dismiss

"To survive a motion to dismiss [under Rule 12(b)(6)], 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *GeigTech E. Bay LLC v. Lutron Elec. Co.*, 352 F. Supp. 3d 265, 274 (S.D.N.Y. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff's factual allegations must "raise a right to relief above the speculative level" to cross "the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Although the court must accept all of the plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a Rule 12(b)(6) motion, the court may consider both "the allegations on the face of the complaint" and "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

### II. Lanham Act § 43(a) Trade Dress Infringement Claim

Trade dress is "'essentially [the] total image and overall appearance' of a product." *L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258, 262 (2d Cir. 1996) (citation

4

omitted, alteration in original). It is a broad concept that "encompasses" a product's look—its overall design, "and all the elements that make up its total appearance"—which makes the product identifiable to consumers. *GeigTech*, 352 F. Supp. 3d at 274 (quoting *Fun-Damental Too, Ltd. v. Gemmy Indus.*, 111 F.3d 993, 1001 (2d Cir. 1997). A product's trade dress includes "features such as size, shape, color or color combinations, texture, or graphics." *Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 Civ 195, 2006 WL 2645196, at *2 (S.D.N.Y. Sept. 13, 2006) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 967 (2d Cir. 1995)).

"Trade dress generally falls into one of two categories: product packaging or product design." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 537 (S.D.N.Y. 2011). Product packaging is the dressing, or packaging, of a product, *Heller Inc. v. Design Within Reach, Inc.*, No. 09 Civ. 1909, 2009 WL 2486054, at *5 (S.D.N.Y. Aug. 14, 2009), and includes elements such as "a label, package, [and] display card." *L. & J.G. Stickley*, 79 F.3d at 262. Product design, by contrast, "refers to the design or configuration of the product itself." *Heller*, 2009 WL 2486054, at *5. Because Cardinal seeks protection for the Bullitt's overall appearance, Cardinal's claim is for product design trade dress infringement. *See id.*

To prevail on a claim of product design trade dress infringement under § 43(a) of the Lanham Act, a plaintiff must (1) "offer a precise expression of the character and scope of the claimed trade dress," *GeigTech*, 352 F. Supp. 3d at 274 (cleaned up); and prove that (2) the trade dress is non-functional; (3) the trade dress has acquired secondary meaning,[3] and is thus distinctive; and (4) the defendant's use of the trade dress is likely to cause consumer confusion

---

[3] "Secondary meaning" is synonymous with acquired distinctiveness and "occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000) (alteration in original) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)).

5

with the product plaintiff seeks to protect. *Id.* at 275. Product design trade dress, unlike product packaging, cannot be inherently distinctive; thus, product design trade dress is distinctive only if it has acquired secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 216 (2000); *accord GeigTech*, 352 F. Supp. 3d at 275.

While a plaintiff need not prove each of these elements to survive a Rule 12(b)(6) motion, it must "articulate sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *GeigTech*, 352 F. Supp. 3d at 275 (cleaned up). Thus, the plaintiff must define its trade dress—if the court "do[es] not know what distinctive combination of ingredients deserves protection," it "will be unable to evaluate how unique and unexpected the design elements are in the relevant market" and "unable to shape narrowly-tailored relief." *Unique Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 Civ. 3599, 2012 WL 3240442, at *4 (S.D.N.Y. Aug. 7, 2012) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)). "Failing to identify the specific elements that make up a purported trade dress may signal to the court that a plaintiff's claim is 'pitched at an improper level of generality, . . . seek[ing] protection for an unprotectible style, theme, or idea.'" *GeigTech*, 352 F. Supp. 3d at 274–75 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2d Cir. 2001)). Thus, although trade dress encompasses a product's total image, the court's "focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress." *Urban Grp.*, 2012 WL 3240442, at *4 (quoting *Landscape Forms*, 113 F.3d at 381). "[D]escribing a trade dress in general terms or broad categories is not sufficient to state a claim for trade dress infringement." *GeigTech*, 352 F. Supp. 3d at 276. Rather, to withstand a Rule 12(b)(6) motion, the plaintiff should define its trade dress with objective identifiers instead of "subjective descriptors like a 'pleasing appearance' or

an 'aesthetic proportion,'" and avoid defining its trade dress in terms of alternative or "optional" features. *Int'l Leisure Prods., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 25 (2d Cir. 2018)..

Notwithstanding Plaintiff's argument to the contrary, Opp'n 11–14, this requirement to plead the elements of one's purported trade dress with specificity applies to claims, like Plaintiff's, that allege infringement of a single product's design trade dress,[4] as well as those alleging infringement of various trade dress elements from a line of products. *See GeigTech*, 352 F. Supp. 3d at 274–75; *Urban Grp.*, 2012 WL 3240442, at *3, *4; *Heller*, 2009 WL 2486054, at *5. The difference is that where the infringement claim involves a line of products, the plaintiff must also show that the look of each product in the line is consistent; and courts are more wary of granting trade dress protection to a line of products, for fear of inhibiting competition.[5] *Yurman Design*, 262 F.3d at 116; *see also GeigTech*, 352 F. Supp. 3d at 278. But, in cases like this one, alleging infringement of "the design of a single product, courts have found that plaintiffs articulate their trade dress with sufficient particularity if they describe the basic elements of the dress with reference to their distinctive features." *GeigTech*, 352 F. Supp. 3d at 278. To do so, the plaintiff must specify which features are distinctive and how they are distinctive. *Id.* at 276; *Urban Grp.*, 2012 WL 3240442, at *5; *Heller*, 2009 WL 2486054, at *6.

---

[4] Indeed, a plaintiff must give a precise description of the elements of its claimed trade dress even where the product in question has a registered design trademark, because while the registration is prima facie evidence of the mark's validity, it does not clarify the mark's scope. *Heller*, 2009 WL 2486054, at *2, *6.

[5] Courts also have a heightened concern for respecting market competition where, as here, the plaintiff claims protection for a product design rather than for product packaging. *See Yurman Design*, 262 F.3d at 114–15. This is because product designs are "almost invariably" intended not to identify the source of the product, but to make it "more useful or more appealing," so granting trade dress protection to a product design threatens to impermissibly inhibit competition. *Id.* (quoting *Samara Bros.*, 529 U.S. at 213).

Here, Plaintiff's claim for infringement of its unregistered trade dress must be dismissed, because Plaintiff has neither specified which features of its product are distinctive, nor given any indication as to how they are distinctive. *See Int'l Leisure Prods., Inc. v. Funboy LLC*, No. 16-CV-4667, 2017 WL 6623887, at *7, *10 (E.D.N.Y. Nov. 9, 2017), *aff'd*, 747 F. App'x 23 (2d Cir. 2018). Instead, Plaintiff's allegations are vague and generic; another court in this circuit has dismissed a trade dress infringement claim with a nearly identical trade dress definition. *ID7D Co. v. Sears Holding Corp.*, No. 3:11cv1054, 2012 WL 1247329 at *1, *9–10 (D. Conn. Apr. 13, 2012). Cardinal's definition is also imprecise, as it describes the trade dress in the alternative. Plaintiff's use of the conjunction "and/or" modifies the sentence to mean: "the trade dress is the Bullitt's sculptural configuration, or its graphic and tonal finish design features, or both." This alternative description "denote[s] categories of features, not the features themselves," *Tracey Tooker & TT Ltd. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016), and signals to the Court that Plaintiff's claimed trade dress is overbroad and unprotectible. Plaintiff's trade dress definition is reminiscent of the impermissibly vague definition in *Heller*, where the plaintiff described its trade dress as "an 'ornamental and sculptural chair.'" *Heller*, 2009 WL 2486054, at *6 (citation omitted). Plaintiff's representations that the Bullitt "is notable for its distinctive styling with a large eye port, a distinctive silhouette and relatively thin chin bar," Am. Compl. ¶ 11, similarly fall short, because these vague and conclusory descriptions do not specify *how* those features are distinctive. And Plaintiff's design patent, which contains only drawings of the helmet design that later became the Bullitt, without any descriptions of its features, does not specify which of those features make up Plaintiff's claimed trade dress. *See* Am. Compl. ¶ 11; Am. Compl. Ex. A. Indeed, Plaintiff implies that only some of the features shown in those

drawings are part of the trade dress. *See* Am. Compl. ¶ 33 ("[The patent's] design elements are *to various extents* incorporated into the Trade Dress." (emphasis added)).

Side-by-side photographs and descriptions of similar features among the Bullitt and the Torc-1 do not meet Plaintiff's burden. *See Heller*, 2009 WL 2486054, at *6; *Tracey Tooker*, 212 F. Supp. 3d at 434. Plaintiff fails to specify which of these features are distinctive or offer any explanation as to how they are distinctive. *Contra GeigTech*, 352 F. Supp. 3d at 277 ("[Plaintiff] describes each individual element in detail, with photographs for illustration. . . . Plaintiff also alleges that the trade dress is distinctive: the Complaint describes the history of roller mounting shade technology . . . and states that [Plaintiff's] shading system is a 'radical departure' from existing technology.").[6] It is unclear whether some or all of these "copied" features are elements of Plaintiff's trade dress, or whether Plaintiff merely points to them as evidence that consumers are likely to confuse the Torc-1 with the Bullitt. *See* Am. Compl. ¶¶ 20, 24, 26–27 (attributing to Defendant an intention to confuse consumers); Opp'n 7–10. The Court cannot choose among these features to come up with its own trade dress definition; indeed, doing so would probably prejudice Cardinal.[7] Instead, Plaintiff must specify the character and scope of its claimed trade

---

[6] The Court finds unpersuasive *Dayco Products, LLC v. Dorman Products, Inc.*, No. 09-cv-13139, 2010 WL 3855221, at *4 (E.D. Mich. Sept. 28, 2010), the sole case Plaintiff cites to support its assertion that its inclusion of photos in the Amended Complaint satisfies its pleading requirements. While photos that fail to specify the elements of the claimed trade dress may suffice for courts within the Sixth Circuit, the Second Circuit (and so this Court) requires more. Further, *Dayco* is distinguishable in that the complaint there included photos of the plaintiff's product, the defendant's infringing product, *and* a non-infringing third-party product, so that the court could compare the three and determine which features were non-functional (and could thus constitute the trade dress). *See id.* at *3–4. Here, by contrast, with only photos of the Bullitt and the Torc-1, the Court cannot discern which features are distinctive and non-functional and could thus make up the trade dress.

[7] Identifying too few design elements runs the risk that others will copy unidentified elements in the future. Identifying too many design elements might enable the defendant to escape an

9

dress.[8] Because Cardinal has failed to do so, the Court dismisses Cardinal's claim for trade dress infringement, without prejudice.

### III. Unfair Competition Claims

"[T]o state an unfair competition claim under the Lanham Act, the moving party must demonstrate (1) that it has a valid trademark[9] entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion." *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 601 (E.D.N.Y. 2017) (cleaned up). Plaintiff has failed to plausibly allege that it has a valid trade dress, so its federal claim for unfair competition is dismissed, again without prejudice. *Id.*

New York common law also proscribes unfair competition. "Where unfair competition is pled in connection with the misappropriation of trade dress . . . the elements necessary to prevail on a claim of unfair competition essentially track those required under the Lanham Act." *Pure Power*, 813 F. Supp. 2d at 549. Indeed, a New York "common law unfair competition claim is identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith." *Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*, No. 11 Civ. 01794, 2011 WL 6600267, at *9 (S.D.N.Y. Dec. 22, 2011). Because Plaintiff has failed to adequately allege its Lanham Act claim, Plaintiff's claim for unfair competition under New York common law necessarily fails. *Id.* It is therefore dismissed, without prejudice.

---

injunction "by changing some but not all of the elements." Prac. L. Intell. Prop. & Tech., *Trade Dress Protection* (last visited Mar. 23, 2021), https://1.next.westlaw.com/Document/.

[8] The Amended Complaint may contain additional defects—for instance, failure to allege that Plaintiff's trade dress is non-functional, *see Ward v. Andrews McMeel Publ'g, LLC*, 963 F. Supp. 2d 222, 238 (S.D.N.Y. 2013) ("Since the Complaint contains no mention of functionality whatsoever, it must be dismissed."), and failure to allege facts in support of non-functionality, *see Urban Grp.*, 2012 WL 3240442, at *6—but the Court declines to reach those issues at present, given that it does not know what the purported trade dress is.

[9] "Trademark" is synonymous with "trade dress" here. *See Samara Bros.*, 529 U.S. at 209–10.

Plaintiff's claim for unfair competition in violation of New York statutory law is also dismissed, without prejudice. Plaintiff does not cite a statute, but if it is relying on New York's General Business Law § 349, Plaintiff would have to "allege that '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Eliya*, 2006 WL 2645196, at *7 (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Section 349 is aimed at consumer protection, so "for the statute to apply, a plaintiff must establish a 'direct harm to consumers' that is greater than the 'general consumer confusion' commonly found in trademark actions." *Id.* (citation omitted). Because Plaintiff's claim for unfair competition is based on "the confusion, mistake, and deception that exists in any case of alleged trade dress infringement," Plaintiff has not stated a claim under § 349. *Id.* at *8. Likewise, if "[P]laintiff alleges unfair competition pursuant to New York General Business Law § 360–l," which is really a claim for trade dress dilution, Plaintiff would have to allege "(1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *Bubble Genius*, 239 F. Supp. 3d at 603. Here, Plaintiff "has failed to specifically identify the elements of [its] purported trade dress, and for that reason has also failed to adequately plead distinctiveness." *Tracey Tooker*, 212 F. Supp. 3d at 434. Thus, Plaintiff has not stated a claim under § 360–l.

Plaintiff's California claims fail for the same reasons. "In the Ninth Circuit, claims of unfair competition . . . under state statutory and common law are 'substantially congruent' to claims made under the Lanham Act." *Walker & Zanger, Inc. v. Paragon Indus.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (discussing California Business and Professions Code § 17200). Because Plaintiff failed

to adequately identify the elements of its purported trade dress, its California common law and statutory unfair competition claims necessarily fail and are dismissed without prejudice.

## IV. Design Patent Infringement Allegations

Cardinal's references to design patent infringement (Am. Compl. ¶¶ 3, 4, 19, 29, 32–33, 35–36) are immaterial to this trade dress infringement action, but because the Court is dismissing the Amended Complaint, H&H's motion to strike those references is moot. *Mahnke v. Munchkin Prods., Inc.*, No. 99Civ.4684, 2001 WL 637378, at *6 (S.D.N.Y. June 7, 2001). Still, Cardinal should "avoid references to irrelevant patent matters in any amended complaint." *Id.* Contrary to Cardinal's argument, allegations of design patent infringement are not proper to show that Cardinal gave H&H notice that it was infringing Cardinal's trade dress, and the design patent is not evidence that Cardinal's claimed trade dress has acquired secondary meaning, which is the only "distinctiveness" relevant here. *See* Opp'n 4–5, 16–17.

## CONCLUSION

For the reasons stated, the Court GRANTS Defendant's motion to dismiss Plaintiff's Amended Complaint, without prejudice, pursuant to Rule 12(b)(6). Plaintiff may file a second amended complaint within 21 days from the filing of this Opinion and Order. The Clerk of Court is directed to close the motion at ECF number 24.

Dated: New York, New York
May 7, 2021

SO ORDERED

*Paul Crotty*

HONORABLE PAUL A. CROTTY
United States District Judge