UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARDINAL MOTORS, INC.,                           :
                                                 :
                    *Plaintiff*,   :   20-cv-07899-PAC
                                                 :
              - *against* -         :   **OPINION & ORDER**
                                                 :
H&H SPORTS PROTECTION USA, INC.,                 :
                                                 :
                    *Defendant*.   :
------------------------------------------------------------X

      Defendant H&H Sports Protection USA, Inc. moves to dismiss Plaintiff Cardinal Motors, Inc.'s Second Amended Complaint ("SAC"), which alleges Defendant copied the trade dress elements of Plaintiff's "Bullitt" motorcycle helmet in violation of the federal Lanham Act and state law. The Court previously dismissed Plaintiff's First Amended Complaint ("FAC") without prejudice because it failed to plead any protectable trade dress. Specifically, the FAC did not adequately describe which of the Bullitt's features constitute a distinctive trade dress, nor did it explain why those features are distinctive. Because the SAC does not cure the flaws that plagued its predecessor, Defendant's motion to dismiss is **GRANTED**, once more without prejudice.

## BACKGROUND

      Plaintiff and Defendant are both corporations that sell motorcycle helmets. *See* SAC ¶¶ 1–2, ECF No. 38. Plaintiff claims its "Bullitt" helmet has been unlawfully copied by Defendant's "Torc-1" helmet. *Id.* ¶¶ 19, 38. Specifically, Plaintiff alleges the Torc-1 infringes upon the Bullitt's trade dress, which Plaintiff claims is protectable under the Lanham Act "by virtue of extensive sales, publicity and online presence." *Id.* ¶ 17.

      Plaintiff's prior FAC attempted to define the Bullitt's trade dress. It highlighted the Bullitt's "sculptural and graphic design . . . namely its sculptural configuration and/or its graphic

1

and tonal finish design features." FAC ¶ 17, ECF No. 16.  It further alleged "[t]he Bullitt is notable for its distinctive styling with a large eye port, a distinctive silhouette and relatively thin chin bar." *Id.* ¶ 11.  The FAC asserted two claims, the first for "federal unfair competition and trade dress infringement" under the Lanham Act, and the second for "common law and state statutory unfair competition" under both New York and California state law.  *See id.* at ¶¶ 37–45.

The Court dismissed the FAC without prejudice.  *See Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No. 20-CV-07899, 2021 WL 1758881, at *6 (S.D.N.Y. May 4, 2021).  The Court found the description of the Bullitt's trade dress "vague and conclusory," as the description failed to explain "*how* those features are distinctive." *Id.* at *4 (emphasis in original).  That inadequate description doomed Plaintiff's trade dress claim, as well as its unfair competition claims.  *Id.* at *5–6.  The Court also noted that the trade dress allegations "may contain additional defects" such as the failure to allege other elements like non-functionality of the Bullitt's trade dress.  *Id.* at *5 n.8.  Finally, the Court instructed Plaintiff—who owns a design patent for the Bullitt—to "avoid references to irrelevant patent matters in any amended complaint." *Id.* at *6.

Plaintiff then filed the SAC, which builds on the previous description of the Bullitt's purported trade dress.  For example, the SAC removes the description of the Bullitt's "distinctive styling with a large eye port, a distinctive silhouette and relatively thin chin bar." *Compare* FAC ¶ 17 *with* SAC ¶ 17.  Instead, the SAC alleges the following trade dress:

> The features of the sculptural and graphic design of The Bullitt (namely its distinctive general overall shape with substantially curved top helmet shell shape, with the substantially curved top transitioning substantially smoothly into a thin chin protector extending very roughly perpendicular to an imaginary plane defined by the helmet shell base; a very roughly flattish helmet shell base; a relatively large eyeport height; a relatively thin chin bar height; a substantial rear overhang beyond a theoretical vertical to the shell base; and a large metallic finished pivot point escutcheon (the

>   "Trade Dress Features")) constitute the trade dress of the
>   Bullitt . . . .

SAC ¶ 17 (footnote omitted); *see id.* ¶ 29 (repeating this description of the trade dress). As a contrast to this trade dress description, the SAC includes photographs of nine different third-party helmets that Plaintiff contends do not infringe on the Bullitt's trade dress. *See id.* ¶ 17(f).

After defining the Bullitt's trade dress, the SAC compares the Bullitt with the Torc-1. The SAC contains side-by-side photograph comparisons of the two helmets (or their components). Descriptions of similarities between the helmets accompany these photographs; Plaintiff argues these similarities prove Defendant intended to confuse consumers with a similar product. *See id.* ¶¶ 20–28. For example, the measurements and ratio ranges of both helmets—including their shells, eyeports, chin bars, rear overhangs, and visor pivot washers—are allegedly substantially identical. *See id.* ¶¶ 17(c)–(f), 21. Plaintiff also compares some of the helmets' auxiliary features, including near-identical "brown leather-like arc segments, metallic bottom trim and a brown leather trim patch," and "chinstraps [which] are rectangular nylon straps that terminate in a semicircle with a contrasting snap . . . ." *Id.* ¶¶ 22–23.

The SAC also reformats Plaintiff's legal claims. *See* SAC at pp. 20–27. The SAC reincorporates the Lanham Act claim for trade dress infringement and unfair competition. It adds a second claim under the Latham Act for false advertising/false designation of origin. Finally, it splits the state law unfair competition claim into three separate claims: one under New York common law, a second under New York statutory law, and a third under both California statutory and common law.

Defendant has moved, under Federal Rule of Civil Procedure 12(b)(6), to dismiss the SAC. Defendant has also moved, under Rule 12(f), to strike the SAC's references to the Bullitt's design patent, counterfeiting, and treble damages. *See* Mot. Dismiss, ECF Nos. 42, 48.

**DISCUSSION**

**I.     Standard for Rule 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff's factual allegations must "raise a right to relief above the speculative level" to cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.  Although the Court must accept the plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In deciding a motion to dismiss, the court may consider both "the allegations on the face of the complaint" and "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

**II.    Count One: Lanham Act Trade Dress Infringement and Unfair Competition**

Plaintiff first asserts a federal unfair competition claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), alleging the Torc-1 infringes on the Bullitt's trade dress.

   *A.  Governing Law*

The Lanham Act protects trademarks from infringement.  "Trademark protection may apply . . . to 'trade dress,' a concept that 'encompasses the overall design and appearance that make the product identifiable to consumers.'" *Int'l Leisure Prod., Inc. v. Funboy LLC*, 747 F. App'x 23, 25 (2d Cir. 2018) (quoting *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001)).  A product's trade dress can include "features such as size, shape, color or color combinations, texture, or graphics." *Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 Civ. 195,

2006 WL 2645196, at *2 (S.D.N.Y. Sept. 13, 2006) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 967 (2d Cir. 1995)).

"Trade dress generally falls into one of two categories: product packaging or product design." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 537 (S.D.N.Y. 2011). The latter category, product design, "refers to the design or configuration of the product itself." *Heller Inc. v. Design Within Reach, Inc.*, No. 09 Civ. 1909, 2009 WL 2486054, at *5 (S.D.N.Y. Aug. 14, 2009). Plaintiff's trade dress claim sounds in product design, as it alleges the Bullitt's overall appearance is protectable.

To state a claim for trade dress infringement based on product design, a plaintiff must (1) "offer a precise expression of the character and scope of the claimed trade dress"; (2) allege that the trade dress is non-functional; (3) allege that the trade dress has acquired secondary meaning, and is thus distinctive; and (4) allege that the defendant's use of the trade dress is likely to cause consumer confusion with the product plaintiff seeks to protect. *GeigTech E. Bay LLC v. Lutron Elec. Co.*, 352 F. Supp. 3d 265, 274–75 (S.D.N.Y. 2018) (cleaned up). Overall, courts exercise "particular caution when extending protection to product designs" under a trade dress theory, because unlike patent or copyright protections, such trade dress protection is open-ended, and runs the risk of "giving the innovator a monopoly over a useful product feature." *Funboy LLC*, 747 F. App'x at 25 (citations omitted).

The Court concludes the SAC fails to allege the first element of the trade dress infringement claim: Plaintiff has again failed to offer a "precise" definition of the Bullitt's trade dress. Accordingly, the Court need not reach the remaining elements to dismiss Plaintiff's claim.

B. *Precise Definition of the Trade Dress*

As the Court previously explained, Plaintiff's claim for infringement of its unregistered trade dress will succeed only if it specifies, with particularity, *which* features of the Bullitt are distinctive, and *how* those features are distinctive. *See Cardinal Motors*, 2021 WL 1758881, at *4 (citing *GeigTech*, 352 F. Supp. 3d at 276). The generalized and overbroad description of the Bullitt's trade dress was inadequate to state a claim in the FAC, and the Court directed Plaintiff define its trade dress more specifically. *Id.* at *6.

The SAC fares little better. In short, it does not "offer a precise expression of the character and scope of the claimed trade dress" sufficient to state a claim. *GeigTech*, 352 F. Supp. 3d at 274. The Bullitt's trade dress is now defined as: (1) a "substantially curved top helmet shell shape, with the substantially curved top transitioning substantially smoothly into a thin chin protector extending very roughly perpendicular to an imaginary plane defined by the helmet shell base"; (2) "a very roughly flattish helmet shell base"; (3) "a relatively large eyeport height"; (4) "a relatively thin chin bar height"; (5) "a substantial rear overhang beyond a theoretical vertical to the shell base"; and (6) "a large metallic finished pivot point escutcheon." SAC ¶ 17. All but one of these features (the pivot point) describe the shape of the Bullitt's outer shell.

The SAC's continued use of imprecise descriptors—of a helmet that, for example, "substantially" curves at the top and sits on a "very roughly flattish" base—dooms this claim. These nebulous words are no more succinct than the ones Plaintiff swapped out of its previous trade dress definition, such as "distinctive." *See Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) (rejecting trade dress that "merely contain[ed] a high level description of features of several watches, such as 'gradient chain,' 'lobster claw closure,' and 'leaf-shaped logo,' without allegations as to whether and how those features are

distinctive"); *Heller*, 2009 WL 2486054, at *6 (descriptors like "ornamental" and "sculptural" did not define a chair's trade dress shape with sufficient precision). Moreover, the SAC has kept many of the same descriptors that the Court already found inadequate, such as the Bullitt's "relatively thin" chin bar and "relatively large" eyeport. *See Cardinal Motors*, 2021 WL 1758881, at *4 (concluding these descriptors "fall short"). If the Bullitt could have a trade dress based on a combination of "curved" shells and "large" eyeports, Plaintiff would claim exclusive ownership over a sweeping variety of helmet designs.

Plaintiff's new photographs of nine third-party motorcycle helmets prove exactly that. "[T]he fact that a similar trade dress is already being used by manufacturers of other kinds of products[] may indicate that that dress is no more than a concept or idea to be applied to particular products." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 33 (2d Cir. 1995). Like the Bullitt, the third-party helmets all have shells that are "substantially curved" at the top, and many of them have shell bases that are "very roughly flattish":



SAC ¶ 17(f). Three of the eight helmets above also have "metallic finished pivot point escutcheon[s]" to connect their visors. The same goes for Plaintiff's "Alternative Design Example":



*Id.*  Although intended to provide a direct contrast with the Bullitt, this purported alternative has the same "substantially curved" top and "very roughly flattish" base as Plaintiff's own helmet—as well as a pivot point for the visor. *See id.*  Surely, these features are not distinctive to the Bullitt if they are shared with every other helmet that Plaintiff has identified.

Plaintiff maintains that the elements of the Bullitt's trade dress must be viewed as a whole. But these elements, when taken together, still do not suffice.  Plaintiff cannot allege a trade dress by providing a "laundry list of the elements that constitute a . . . design." *Nat'l Lighting Co., Inc. v. Bridge Metal Industries*, LLC, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009).  Instead, Plaintiff must provide "a description of which . . . trade dress design elements are distinctive and *how* they are distinctive." *Id.*  The SAC still does not explain *how* the Bullitt's shape, taken as a whole, makes the helmet distinctive, rendering the description insufficient to allege a protectable trade dress. *Cf. GeigTech*, 352 F. Supp. 3d at 277 (plaintiff stated a trade dress with sufficient particularity by describing each individual element their motorized window shade while also explaining how that overall design was a "radical departure" in roller shade mounting technology).

The newly added measurements of the Bullitt and the Torc-1 cannot narrow Plaintiff's overbroad trade dress definition.  Even if the Torc-1 does, for example, copy the Bullitt's front opening size of approximately 21 centimeters by 12.5 centimeters, *see* SAC ¶ 21, that copying does not prove the Bullitt has a protectable trade dress in the first place.  "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying

8

goods and products." *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 181 (2d Cir. 2021) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001)), *cert. denied*, 142 S. Ct. 1359 (2022). Plaintiff claims protection only for "a relatively large eyeport height" and "a relatively thin chin bar height"—it does not seek protection for front helmet openings within an exact size range. These measurement comparisons, therefore, do not support Plaintiff's claim.

Likewise, descriptions of auxiliary features shared by the Bullitt and the Torc-1 are not helpful because Plaintiff never contends these features are part of the purported trade dress. These auxiliary features—for example, brown chin straps, metal rivets, and leather trim—have nothing to do with the "distinctive general overall shape" that is purportedly the Bullitt's trade dress; on the contrary, many of them are inner components of the helmet. This same issue plagued the FAC. *See Cardinal Motors*, 2021 WL 1758881, at *2 ("Side-by-side photographs and descriptions of similar features among the Bullitt and the Torc-1 do not meet Plaintiff's burden. It is unclear whether some or all of these 'copied' features are elements of Plaintiff's trade dress, or whether Plaintiff merely points to them as evidence that consumers are likely to confuse the Torc-1 with the Bullitt."). Plaintiff has failed to resolve this problem in the SAC and has therefore failed to state a claim of trade dress infringement.

### III.    Count Two: False Designation of Origin and False Advertising

The SAC has added a claim under Section 43(a) of the Lanham Act. *See* SAC ¶¶ 44–45. Section 43(a) "provides for two distinct causes of action: false designation of origin or source, known as 'product infringement,' and false description or representation, known as 'false advertising.'" *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015) (quoting *Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991)). Plaintiff titles its claim as one for "False Advertising," SAC at p. 23, but then alleges

that "Defendant's use of the Trade Dress is a *false designation of origin* used in connection with the sale of" helmets that copy the Bullitt's design, *id.* ¶ 45 (emphasis added). Plaintiff therefore seems to conflate a false designation of origin claim with a false advertising claim; its claim is labeled as the latter but sounds in the former. The Court need not determine which claim Plaintiff intended to bring, however, because neither claim is adequately stated.

As to false designation of origin: to establish a claim, a plaintiff must allege the defendant "attempt[ed] to sell its product with a false designation that suggests the product originated from the plaintiff." *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 487 (S.D.N.Y. 2020) (quoting *Pulse Creations, Inc.*, 154 F. Supp. 3d at 57). A plaintiff must first establish that a product is worthy of trademark protection before it can recover for false designation of origin. *See Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 248 (E.D.N.Y. 2021). Plaintiff's false designation of origin claim therefore fails for the same reason its infringement claim fails: the Bullitt lacks a trade dress worthy of trademark protection.

As to false advertisement: to establish a claim, the plaintiff must show that the defendant made an advertising statement, and that "(1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers." *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir.1995). That advertising statement must have "misrepresented an inherent quality or characteristic of the product." *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997) (internal quotation omitted). The SAC never alleges that Defendant made any false or deceptive statement about the quality of the Torc-1. Thus, Plaintiff has not stated a claim under an alternative theory of false advertising.

## IV. State Law Claims

Plaintiff again brings claims of unfair competition under state law. Unlike the FAC, the SAC cites statutory sources for these claims. Specifically, Plaintiff alleges claims of unfair competition under New York and California common law, as well as under New York and California statutory law: New York General Business Law § 349 ("N.Y. GBL § 349"), and California Business and Professions Code § 17200. Despite these new citations, Plaintiff's state law claims again fail for substantially the same reasons that its federal claims fail.

Under New York common law, "the elements necessary to prevail on a claim of unfair competition essentially track those required under the Lanham Act." *Pure Power Boot Camp*, 813 F. Supp. 2d at 549. As discussed above, Plaintiff has failed to properly plead a trade dress violation, thus its claim under New York common law fails. The claims under both California statutory law and common law fail for similar reasons. *See Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,* 925 F. Supp. 2d 1067, 1072 (C.D. Cal. 2012) ("[California] common law claims of unfair competition and actions pursuant to [] § 17200 are 'substantially congruent' to claims made under the Lanham Act." (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994))).

Nor does Plaintiff sufficiently plead a violation of New York statutory law. "To establish a prima facie case for a claim of deceptive trade practices under N.Y. GBL § 349, a claimant must allege that: '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (quoting *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000)). Plaintiff must also allege Defendant's infringement has "significant ramifications for the public at large," not just for the Plaintiff itself. *Id.* Here, Plaintiff has failed to plead such a public injury. The SAC only alleges that the consumers "will

11

continue to be deceived," and they would be "deprive[d] . . . of properly fitting products which they thought they had purchased" and "the protections associated with purchases of genuine The Bullitt helmets." SAC ¶¶ 51–53. These injuries are definitionally connected to the regular harms of trademark infringement. "Where the only alleged harm is that which is generally associated with violations of intellectual property law, courts in this district have found that plaintiffs cannot state a claim under [N.Y. GBL] § 349." *Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 CIV. 195, 2006 WL 2645196, at *8 (S.D.N.Y. Sept. 13, 2006); *see also Paul Rudolph Found. v. Paul Rudolph Heritage Found.*, No. 20 CIV. 8180, 2021 WL 4482608, at *6 (S.D.N.Y. Sept. 30, 2021) (dismissing because the complaint "focuse[d] on the alleged harms suffered by Plaintiff, not by the public, beyond bald assertions of public confusion").

## V.     Dismissal without Prejudice

The Court previously dismissed the FAC without prejudice so Plaintiff could replead and correct the defects. "When a plaintiff does not correct the defects in an initial pleading through the filing of a more detailed amended complaint, the amended complaint may be dismissed with prejudice." *Liner v. Goord*, 115 F. Supp. 2d 432, 434 (S.D.N.Y. 2000). At bottom, all of Plaintiff's "claims are predicated on a protectable trade dress," yet it has repeatedly failed to define that trade dress. *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 21-CV-7712, 2022 WL 3227861, at *7 n.13 (S.D.N.Y. Aug. 10, 2022). Nevertheless, while the Court is skeptical "that a third try would be the charm," *id.*, leave to amend "shall be freely given when justice so requires," and shall be given here. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)(2)). Despite the repeated problems in adequately stating a trade dress, Plaintiff shall have one final chance, if it chooses, to amend its complaint to state a claim.

The Court grants this leave with a warning to Plaintiff, however. The SAC is replete with references to Plaintiff's design patent for the Bullitt—references the Court explicitly instructed Plaintiff to strike from any amended complaint. While dismissal moots Defendant's Rule 12(f) motion to strike the SAC's references to the design patent and treble damages, Plaintiff is once again directed to strike these references from any amended complaint. Failure to abide by these directions could independently warrant dismissal of that future pleading with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (dismissing with prejudice where the District Court "had put plaintiff's counsel on the plainest notice of what was required").

## CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's motion to dismiss the Second Amended Complaint, without prejudice. Plaintiff may file a third amended complaint within 21 days from the filing of this Opinion and Order. The Clerk of Court is respectfully directed to close the motion at ECF No. 48.

Dated: New York, New York
September 8, 2022

SO ORDERED

*Paul A. Crotty*

HONORABLE PAUL A. CROTTY
United States District Judge