UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CARDINAL MOTORS, INC.,                          :
                                                :
                              *Plaintiff*,      :        20-cv-07899-PAC
                                                :
              - against -                       :        **OPINION & ORDER**
                                                :
H&H SPORTS PROTECTION USA, INC.,                :
                                                :
                              *Defendant*.      :
------------------------------------------------------------------X

     Defendant H&H Sports Protection USA, Inc. moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Cardinal Motors, Inc.'s Substitute Third Amended Complaint ("STAC"), which alleges that Defendant copied Plaintiff's trade dress of its "The Bullitt" motorcycle helmet in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125, and state law.  Alternatively, pursuant to Rule 12(f), Defendant moves to strike from the STAC references to treble damages, counterfeiting, and features of The Bullitt not directly relevant to the claimed trade dress.

     Assessing prior motions to dismiss, the Court dismissed Plaintiff's First Amended Complaint ("FAC") and Second Amended Complaint ("SAC") without prejudice because each failed to adequately plead the claimed trade dress with precision or with allegations of its distinctiveness.  On this latest attempt, Plaintiff offers two theories of the claimed trade dress. Plaintiff still fails, however, to allege a precise expression of The Bullitt's trade dress or how that purported trade dress is distinct to The Bullitt.  The Court previously warned that this would be Defendant's final opportunity to amend the complaint.  As such, the motion to dismiss is **GRANTED** with prejudice.  Finally, Defendant's motion to strike is **DENIED** as moot.

**BACKGROUND**

Plaintiff and Defendant are both corporations involved in the motorcycle helmet business. *See* STAC ¶¶ 1–2, ECF No. 55.  Plaintiff designs motorcycle helmets and licenses those designs, while Defendant manufactures and sells motorcycle helmets.  *Id.*  Plaintiff has licensed one of its designs, "The Bullitt" helmet, to Bell Sports, Inc., which is responsible for manufacturing it.[1]  *Id.* ¶ 11.  The Bullitt is shown below:

 

*Id.* ¶¶ 17, 21.  Plaintiff claims that Defendant's "Torc-1" helmet unlawfully copies The Bullitt helmet and thus infringes Plaintiff's trade dress of The Bullitt.  *See id.* ¶ 19.  Specifically, Plaintiff brings two claims of unfair competition and trade dress infringement pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and brings similar claims under New York and California law. STAC ¶¶ 37–54.

On January 18, 2021, Plaintiff filed the FAC against Defendant, asserting claims of "Federal Unfair Competition and Trade Dress Infringement" under Section 43(a) of the Lanham Act and "Common Law and State Statutory Unfair Competition" without identifying the state statutes on which Plaintiff's claims were based.  *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc. ("Cardinal I")*, No. 20-cv-07899, 2021 WL 1758881, at *1 & n.2 (S.D.N.Y. May 4, 2021). On May 4, 2021, the Court dismissed the FAC without prejudice under Federal Rule of Civil

---

[1] The Bullitt is manufactured with a "flat" or "bubble" visor.  STAC ¶¶ 11, 28.  Although Plaintiff references the two versions, it does not allege that the visor is part of either claimed trade dress.

Procedure 12(b)(6), reasoning that Plaintiff's focus on the "sculptural and graphic design" of the helmet and "its distinctive styling with a large eye port, a distinctive silhouette and relatively thin chin bar," was too vague, generic, and conclusory.  *See id.* at *2, 4.  And because the state law claims hinged on Plaintiff's ability to allege a protected trade dress under the Lanham Act, the Court also dismissed those claims without prejudice.  *See id.* at *5–6.

On September 21, 2021, Plaintiff filed the SAC, asserting claims of trade dress infringement and false advertising/false designation of origin under the Lanham Act, and similar unfair competition claims pursuant to New York General Business Law § 349, California Business and Professions Code § 17200, and New York and California common law.  *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc. ("Cardinal II")*, No. 20-cv-07899, 2022 WL 4109721, at *2, 5 (S.D.N.Y. Sept. 8, 2022).  On September 8, 2022, the Court dismissed that complaint without prejudice under Federal Rule of Civil Procedure 12(b)(6), concluding that the amended allegations were insufficient to support either the federal or state law claims, because Plaintiff's description still failed to precisely define the claimed trade dress.  *Id.* at *3, 6.  Notably, the SAC continued to use nebulous descriptors, like "substantially" curved top, "relatively thin" chin bar, and "relatively large" eyeport.  *Id.* at *4.  Plaintiff added photos of nine third-party helmets, which did not aid Plaintiff in defining the trade dress.  In fact, they did the opposite by showing the ways in which The Bullitt's features were shared among various helmets.  *See id.*  Plaintiff again used side-by-side photo comparisons of the Torc-1 and The Bullitt, describing the auxiliary features represented in the photos, such as the brown leather-like arc segments, metallic trim, brown leather patches, and chinstraps.  *Id.* at *2.  However, the side-by-side photos and descriptions of auxiliary features were unhelpful because these features were not part of the claimed trade dress.  *Id.* at *5.

Plaintiff now alleges two alternative theories of The Bullitt's trade dress.  The first, what Plaintiff calls the "General Trade Dress," continues to focus on the "features of the sculptural and graphic design of the Bullitt." *Id.* ¶ 17.  The second theory of the trade dress, called the "Detailed Trade Dress," starts with a near-verbatim version of the General Trade Dress and adds the elements that the Court previously referred to as the auxiliary features, such as the metallic borderlines and brown leather accents.  *Id.* ¶¶ 17, 31.

Like the SAC, Plaintiff provided the same "Alternative Design Example" to show a helmet that purportedly does not infringe The Bullitt's General Trade Dress:



*Id.* ¶ 17.  Plaintiff again included Designs A through H of the "collection of helmets found on the Internet":



| Design A | Design B | Design C | Design D |
| Design E | Design F | Design G | Design H |

*Id.*  For the first time, Plaintiff allegedly describes how the nine third-party helmets have an appearance that "starkly differs from that of The Bullitt."  *Id.*  For example, "Design C has a facet-

stepped chin protector and substantial irregularities on its surface and no escutcheon," and "Design E has a tall chin protector which extends forward and no large escutcheon giving it a non-smooth faceted appearance in the front." *Id.* Plaintiff alleges, in a similar fashion, how particular design elements of Designs A, B, D, F, G, and H allegedly yield a different appearance from that of The Bullitt. *See id.*

Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f), to dismiss the STAC and to strike certain material in the STAC. *See* Def.'s Mot., ECF No. 63.

## DISCUSSION

### I.   Standard for Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations must "raise a right to relief above the speculative level" to cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. While the Court must draw all reasonable inferences in favor of the plaintiff and accept the plaintiff's factual allegations as true, the Court may not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### II.   Lanham Act Unfair Competition and Trade Dress Infringement

Plaintiff asserts two claims of unfair competition and trade dress infringement—one claim covering the General Trade Dress and the other for the Detailed Trade Dress—in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.  STAC ¶¶ 37–43, 50–54.

**A.  Governing Law**

The Lanham Act protects registered and unregistered trademarks.  Section 43(a) applies to unregistered marks and "gives a producer a cause of action for the use by any person of 'any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods.'"  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000) (quoting 15 U.S.C. § 1125(a)).

Such trademark protection applies to "trade dress"—a "concept that 'encompasses the overall design and appearance that make the product identifiable to consumers.'"  *Int'l Leisure Prod., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 25 (2d Cir. 2018) (quoting *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001)).  Trade dress may consist of either product packaging or product design.  *Samara Bros.*, 529 U.S. at 209.  Plaintiff's claimed trade dress is for The Bullitt's overall "design or configuration of the product itself," *Heller Inc. v. Design Within Reach, Inc.*, No. 09-cv-01909, 2009 WL 2486054, at *5 (S.D.N.Y. Aug. 14, 2009), which makes Plaintiff's claim one for trade dress design.

To state a claim for trade dress infringement based on product design, a plaintiff must allege (1) "a precise expression of the character and scope of the claimed trade dress"; (2) that the trade dress is not functional; (3) that the trade dress has acquired secondary meaning; and (4) that the defendant's use of the trade dress is likely to cause consumer confusion with the product plaintiff seeks to protect.  *GeigTech E. Bay LLC v. Lutron Elec. Co.*, 352 F. Supp. 3d 265, 274–75 (S.D.N.Y. 2018).

**B.  Precise Expression of the Character and Scope of the Trade Dress**

The Supreme Court has cautioned against "misuse or overextension of trade dress" because "product design almost invariably serves purposes other than source identification."  *TrafFix*

*Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).  The requirement that the plaintiff precisely express the scope and features of its claimed trade dress ensures that a plaintiff does not assert protection over an unprotectable trade dress.  Part of this requirement that the description be sufficiently precise requires that the plaintiff allege how the features that make up the claimed trade dress are distinctive.  *GeigTech*, 352 F. Supp. 3d at 276.  Indeed, "a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997).  Similarly, [t]his pleading requirement assists courts in 'winnowing out claims that are overbroad as a matter of law.'" *Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-cv-1272, 2018 WL 1796228, at *6 (E.D.N.Y. Jan. 11, 2018), *report and recommendation adopted*, 2018 WL 1027157 (E.D.N.Y. Feb. 22, 2018), *aff'd*, 749 F. App'x 43 (2d Cir. 2018) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2d Cir. 2001)).

## C.  Application to the General Trade Dress

The Court begins with the General Trade Dress claim.  In full, the General Trade Dress includes the following components that make up the "features of the sculptural and graphic design of the Bullitt":

> its distinctive general overall shape with substantially curved top helmet shell shape, with the substantially curved top transitioning substantially smoothly into a thin chin protector extending roughly perpendicular to an imaginary plane defined by the helmet shell base; a flattish helmet shell base; a relatively large eyeport height (compared to the height of the chin protector); a single-level non-stepped chin bar surface; a thin chin bar height substantially thinner than the eyeport; a substantial rear overhang beyond a theoretical vertical to the shell base giving the helmet a squat appearance; and a large diameter pivot point escutcheon . . . .

STAC ¶ 17.  That characterization includes only minor changes from the trade dress alleged in the SAC.  It adds the size of certain elements (i.e., the eyeport's height relative to the height of the "chin protector" and "chin bar," and that the chin bar surface is "a single-level non-stepped" surface).  *Id.*  It also adds that the helmet has a "squat appearance" but omits that the escutcheon has a metallic finish, instead describing it as a "large diameter" pivot point escutcheon.  *Id.*

The STAC's expression of this alleged trade dress remains imprecise.  There is no doubt that the General Trade Dress is detailed.  But a detailed expression of the trade dress is not necessarily a precise one.  For example, in *Shevy Custom Wigs, Inc. v. Aggie Wigs*, the plaintiff sought to protect the trade dress of its wig and fall by asserting trade dress over the "specific lace band at the hairline"; the "particular multi-directional part"; the "wefted stretch net; the layered style; the distribution of the hair and the weight of the piece; and the size and shape of the net." No. 06-cv-1657-JG, 2006 WL 3335008, at *1 (E.D.N.Y. Nov. 17, 2006).  Although that statement of the trade dress was clearly detailed, the court concluded that it was too "broad" such that "relief might well grant [the plaintiff] a monopoly over a concept of a wig or fall, rather than a particular design."  *Id.* at *5; *see also Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) (rejecting that a "high level description of features of several watches, such as 'gradient chain,' 'lobster claw closure,' and 'leaf-shaped logo'" was sufficient).

Likewise, there is no precise expression of the trade dress if it amounts to a claim over a general category of features.  In *Eliya*, for example, the plaintiff asserted trade dress protection over three shoe designs: the plaintiff's trade dress description included reference to a "closed toe with an angular shape on the top front portion of the shoe"; an "angular-like shape on the top front portion of the shoe"; and a "flat sole."  2018 WL 1796228, at *7.  The court concluded that these features did not "offer insight as to the precise nature" of the trade dress because that description

amounted to "categories of features."  *Id.*; *see also Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (concluding that the asserted trade dress over the "unique elements of style, shape, angle, height, width, and/or slant" of hats denotes categories of elements rather than a protectable trade dress).

Here, the expression of the General Trade Dress encompasses a description of the entire helmet and each of its components, making it so detailed that it renders the claimed trade dress too broad.  In particular, it covers not only the "overall shape" of The Bullitt but also a "curved top helmet shell shape"; a "thin chin protector"; a "flattish helmet shell base"; a "relatively large eyeport height"; a "single-level non-stepped chin bar surface"; a "thin chin bar height substantially thinner than the eyeport"; a "squat appearance"; and a "large diameter pivot point escutcheon." STAC ¶ 17.  That trade dress "both individually and in the aggregate," is 'too broad to form a concrete expression of an idea.'"  *Eliya*, 2018 WL 1796228, at *7 (citation omitted).  As this Court previously explained, the trade dress would amount to a claim of "exclusive ownership over a sweeping variety of helmet designs."  *Cardinal II*, 2022 WL 4109721, at *4.  That reasoning applies just the same to the General Trade Dress alleged in the STAC.  Further, all of those features make up general categories of features common to the industry rather than precise elements.  And "[a] trade dress that consists of the shape of a product that conforms to a well-established industry custom is generic and hence unprotected."  *Luv n' Care, Ltd. v. Regent Baby Prod. Corp.*, 986 F. Supp. 2d 400, 408 (S.D.N.Y. 2013) (noting, for example, that the Second Circuit has held that the design of "Swedish Fish" candy is not protectible because "animal-shaped gummy candy is common in the candy industry").

Second, Plaintiff's expression of the trade dress independently fails to allege how the features of the Bullitt are distinctive.  Plaintiff asks the Court to focus on the "overall look" of the

claimed trade dress.  Mem. Law Opp'n 11, ECF No. 62.  However, the STAC's attempt to emphasize the overall distinctiveness of the helmet is nothing more than the assertion that it has a "distinctive general overall shape" and that "the general overall appearance [is] different in all of these designs."  *Id.*  That type of conclusory allegation is insufficient.  *See, e.g.*, *Eliya*, 2018 WL 1796228, at *6 (concluding that the allegation that the shoe's "'woven alternating pattern' is distinctive" is "wholly conclusory and cannot support a cognizable claim" (alteration omitted)).

In addition, Plaintiff highlights that there is a "difference in details" between the alternative designs and The Bullitt.  *See* STAC ¶ 17.  That one or two of the examples lack a chin protector or that a few of the helmets do not have a flat base, as Plaintiff alleges, misses the point.  Alleging what makes the claimed trade dress distinct goes beyond listing off differences in the products.  Rather, distinctiveness is how the product is unique and entitled to trade dress protection.  *See, e.g.*, *GeigTech*, 352 F. Supp. 3d at 277 (plaintiff stated distinctiveness by explaining how the overall design of its roller shades system was a "radical departure" in roller shade mounting technology).  Plaintiff therefore had to allege more than a mere mix-and-match comparison between certain features of The Bullitt and the other helmet designs to sufficiently plead distinctiveness.  *See* STAC ¶ 17.[2]

Given Plaintiff's failure to sufficiently allege a precise expression of the trade dress, including how that trade dress is distinct, the Court need not address whether the remaining factors

---

[2] Defendant argues that the claimed trade dress is also not distinct because Plaintiff has alleged two alternative forms of its trade dress.  Def.'s Mem. Law 6–7, ECF No. 66.  But "a plaintiff may make effective use of the alternative or hypothetical pleading that is permitted by [Federal] Rule [of Civil Procedure] 8(d)(2) in presenting the factual background or legal theories supporting its claim for relief."  5 Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1282 (4th ed. Apr. 2023 update) (footnote omitted).

of the trade dress claim are sufficiently alleged.  The motion to dismiss the General Trade Dress infringement claim (Count I) is granted.

### D.  Application to the Detailed Trade Dress

The Detailed Trade Dress is an alternate pleading of the unregistered trade dress infringement claim, and the same legal standards that apply to the General Trade Dress claim apply to this claim.  Because the Specific Trade Dress rests in substantial part on the General Trade Dress upon which Plaintiff fails to state a claim, the Court need not consider the sufficiency of the alleged Specific Trade Dress separately.  It fails for the same reasons, so the motion to dismiss the trade dress infringement claim for the Detailed Trade Dress (Count IV) is granted.

### III.  State Law Unfair Competition Claims

Plaintiff asserts claims for unfair competition under New York and California common law and under California Business and Professions Code § 17200 based on the General Trade Dress theory.  *See* STAC ¶¶ 44–49.  As the Second Circuit has held, "if all federal claims are dismissed before trial, the state claims should be dismissed as well."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (cleaned up).  Given that the Court has dismissed all federal claims and the early nature of this dismissal relative to the litigation, Defendant's motion to dismiss the state claims is granted as well.

### IV.  Dismissal with Prejudice

In assessing the last motion to dismiss, the Court warned Plaintiff that it would have only one more opportunity to amend its complaint.  *See Cardinal II*, 2022 WL 4109721, at *6.  Plaintiff's claims have once again—for the third time—failed to withstand Defendant's motion to dismiss.  Therefore, the STAC is dismissed with prejudice.

11

**V.      Motion to Strike**

Defendant moves to strike references to counterfeiting and treble damages and certain descriptions of The Bullitt's features not directly tied to the claimed trade dress. Because the Court grants Defendant's motion to dismiss with prejudice, the request to strike references from the STAC is denied as moot.

**CONCLUSION**

For the reasons stated, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's Lanham Act trade dress infringement claims (Counts I and IV) and unfair competition state law claims (Counts II and III) with prejudice. The Court **DENIES** the motion to strike as moot. The Clerk of the Court is respectfully directed to close the motion at ECF No. 63.

Dated: New York, New York          SO ORDERED
       September 26 2023

                                   _____
                                   HONORABLE PAUL A. CROTTY
                                   United States District Judge